## BUSKIRK v. TALCOTT.

(Supreme Court, Appellate Term.   December 21, 1905.)

1. PRINCIPAL AND AGENT—PROOF OF AUTHORITY—REPRESENTATIONS OF AGENT.

A statement made to plaintiff by an alleged agent of defendant that he has authority to order goods for defendant's account is not conclusive on defendant.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Agent, § 425.]

2. SAME—IMPLICATION OF AUTHORITY.

An alleged principal cannot be held liable on a contract made by his alleged agent, on the ground that he has made use of signs and letter heads having his and the agent's names thereon, where the party contracting with the agent had no knowledge at the time of the contract of such signs and letter heads.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Agent, §§ 534–552.]

3. SAME—DEALING WITH AGENT.

Third parties dealing with an agent are put upon their guard, and do so at their own risk.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Agent, § 529.]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by George M. Buskirk against James Talcott.   From a judgment in favor of plaintiff, defendant appeals.   Reversed.

Argued before SCOTT, P. J., and BISCHOFF and MacLEAN, JJ.

Black, Olcott, Gruber & Benynge (Abraham Gruber and Irving L. Ernst, of counsel), for appellant.

W. A. Purrington, for respondent.

SCOTT, P. J.   The plaintiff sues to recover the value of a quantity of office stationery alleged to have been purchased by defendant.   The stationery was ordered by one Watts, and received and used by him, and the question involved is whether Watts acted as defendant's agent, and was authorized so to act, in buying the goods sued for.   Watts had established relations with certain persons abroad who were to consign goods to him for sale in this city.   He made an arrangement with defendant by which the latter agreed for a stated commission on sales to furnish Watts with a place in which to do business, and to pass upon credits, guaranty sales, and make collections, all other expenses, outside of the actual preservation of the goods, to be borne by Watts, who was to retain all the profit made out of the business beyond the percentage to be paid to defendant.   Watts ordered from plaintiff the goods now sued for, representing to him that they were for defendant, and that he (Watts) had authority from defendant to order them.   Plaintiff acted in reliance upon these statements.   He made no effort to corroborate them and had no knowledge of the relation between Watts and defendant, except what Watts told him.   Watts testified that he told defendant that he would need certain books and stationery to carry on the business, and

that defendant told him to get what he needed. This is denied by defendant; but, even if it were true, it is doubtful, in view of the arrangement between Watts and defendant, if this could properly be construed as authorizing Watts to purchase the stationery for defendant's account, as it does not appear that defendant agreed to bear generally the expenses incurred by Watts in selling goods. However this may be, the jury were so instructed as to require a reversal of the judgment on other grounds. It is perfectly clear that the defendant is not concluded by Watts' statement to plaintiff that he had authority to order goods for defendant's account. No man can be rendered liable for the acts of an assumed agent merely because the agent asserts his authority to bind him. So much is conceded by the respondent. It appeared in evidence that upon the building in which Watts conducted his business appeared the sign, "James Talcott, Commission Merchant: Foreign Department Stephen K. Watts," and that the same or similar words appeared upon the letter heads used in connection with the business. It did not appear that plaintiff, before he furnished the stationery knew anything about the sign, or the use of the words upon the stationery, except that as to part of the order received from Watts he printed a circular letter, upon which, by Watts' direction he printed the words quoted.

In charging the jury, the learned justice instructed them in effect that they should find for plaintiff if they found that Watts was authorized to contract the bill, or if defendant so held Watts out as his agent as to justify the plaintiff in assuming that Watts was so authorized, and, as bearing upon this holding out of Watts as agent, the attention of the jury was especially and repeatedly called to the signs and letter heads above referred to, of which, as has been said, the plaintiff had no knowledge when he extended the credit. These instructions were duly excepted to, and in our opinion constitute reversible error. Undoubtedly persons may, in certain cases, be held liable as principals for the acts of their assumed agents, because they have by their actions imparted to those agents an apparent authority to represent them. This rule when applied rests upon the doctrine of estoppel, but it can have no application in a case like the present, wherein the person dealing with the assumed agent had no knowledge, at the time of so dealing, of the acts of the principal which, if known, might have justified the belief that the agent acted by authority. Ludowieg v. Talcott, 47 Misc. Rep. 77, 93 N. Y. Supp. 621. If plaintiff, when he accepted Watts' order for stationery, knew nothing of the actual or apparent relation between Watts and the defendant, except what Watts told him, and had never seen or known of the signs upon the building or the letter heads used in the business, he could not have relied upon those signs and letter heads as the basis of a belief that Watts was Talcott's agent authorized to order goods in his name. It was therefore misleading to instruct the jury that they were entitled to consider whether defendant by the use of the signs and letter heads had so held out Watts as his agent as to justify the assumption by plaintiff that Watts was authorized to order goods on defendant's account and credit. We think also that the court should have distinctly charged the jury, as requested by defendant, that when third parties deal with an agent they are put upon their guard and do so at their risk.

Other grounds of error are assigned which we do not consider it necessary to consider, since for these already pointed out the judgment must be reversed.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.